## Pittsburgh, Appellant, *v.* O'Brien.

## Pittsburgh, Appellant, *v.* Rodgers.

*Attorneys-at-law—Fees—Docket fees—City solicitor—Act of March 7, 1901, P. L. 20, and June 20, 1901, P. L. 586—Act of February 22, 1821, P. L. 50.*

1. The docket or attorney fee provided by the Act of February 22, 1821, P. L. 50, belongs to an attorney-at-law by virtue of his office, and not to his client.

2. A city solicitor cannot be deprived of his docket fees in litigation conducted for the city unless he has agreed by contract or is required by statute as a condition of his appointment to turn his docket fees over to the city.

3. There is nothing in the Acts of March 7, 1901, P. L. 20, or June 20, 1901, P. L. 586, which will deprive a city solicitor of a city of the second class of his docket fees. The words "fees and perquisites" in the later act do not include docket fees. They refer only to fees to which the title is in the city.

Argued November 4, 1912. Appeals, Nos. 169 and 170, Oct. T., 1912, by plaintiff, from orders of C. P. Allegheny Co., April T., 1912, Nos. 1881 and 1642, discharging rules for judgment for want of sufficient affidavits of defense in cases of City of Pittsburgh v. William B. Rodgers and Charles A. O'Brien. Before FELL, C. J., BROWN, MESTREZAT, ELKIN and STEWART, JJ. Affirmed.

Rules for judgment for want of sufficient affidavits of defense.

SWEARINGEN, P. J., filed the following opinion:

The plaintiff has entered a rule for judgment for want of a sufficient affidavit of defense. The action was for the recovery of certain moneys, commonly called docket fees, received by the defendant while city solicitor for the plaintiff. An affidavit of defense was filed, in which all liability was denied. Upon this rule the well-pleaded averments of fact in the affidavit of defense must, of course, be taken as true.

The sums of money paid to defendant and to his said assistants were what are known as docket fees. In each of the cases, in which such a fee was collected, it was taxed by the proper officer as part of the costs and was paid by the opposing and losing party. None of said sums were paid by plaintiff to the defendant or to his said assistants. The defendant never made any return of these docket fees to the city controller of Pittsburgh, nor did he pay any part of the same to the

treasurer of said city. During the defendant's term of office, the city controller of Pittsburgh personally and officially knew that the defendant was receiving and retaining docket fees, in all cases where his appearance was entered for the city; and the controller likewise knew that the first assistant city solicitor was receiving and retaining such fees in all cases where the latter's appearance was entered for the city. During the defendant's term and at the expiration thereof, the said controller of the City of Pittsburgh, as required by Article VIII, Section 7, of the Act of March 7, 1901, P. L. 20, audited, examined and settled the defendant's accounts. He did not find that the defendant was indebted to said city, and he did not state and file an account against the defendant in the Court of Common Pleas of said County of Allegheny.

It has been the universal practice of city solicitors of Pittsburgh, both before and since the Act of 1901, to retain docket fees as aforesaid, and the plaintiff was aware that such practice and usage prevailed.

The plaintiff made demand upon the defendant, March 1, 1912, for the payment of the aforesaid docket fees, and payment thereof was refused.

Attorneys-at-law are officers of the courts where they are admitted to practice. They constitute a class of public officers. They are so recognized in the Constitution, in the statutes, and in their oath of office, wherein they swear to behave themselves "in the office of attorney according to the best of their learning and ability": Austin's Case, 5 Rawle 191; Steinman Case, 95 Pa. 220.

For two centuries the legislature of this State, and of the province which preceded, has prescribed certain fees for attorney to be paid by litigants. The act now in force upon the subject is that of February 22, 1821, P. L. 50 (7 Smith's Laws 367), which is entitled "An act to alter and amend the fee bill." This statute prescribes the fees of public officers, and Section 2 provides: "And be it further enacted, etc., that the attor-

neys-at-law of the several courts of this Commonwealth shall be entitled to receive" certain specified sums for certain services, including the sum of three dollars in cases enumerated. These fees belong to the attorney and not to his client. They go to the attorney because he appears in the litigation as an officer of the court: Act of February 22, 1821; Ranck v. Hill, 3 Pa. 423; Ellsbre v. Ellsbre, 28 Pa. 172. If a litigant appears in his own behalf, as he has a right to do, no docket fees is or can be taxed.

It is, therefore, plain that the title to the docket fees, received as aforesaid by the defendant, was in him and was not in the City of Pittsburgh. He received them by virtue of his office of attorney-at-law, pursuant to the Act of 1821, just as he received docket fees in other litigation where other clients had employed him. He did not receive them by virtue of his office of city solicitor, because that officer has no legal right to docket fees. Indeed, the counsel for plaintiff did not deny, at the argument, that the title was in the defendant. His contention was that the defendant's contract with the city prevented his retention of these docket fees. It was not claimed that there was any express contract of that character. But the proposition was that the defendant's appointment to and his acceptance of the office of city solicitor constituted a contract, under the statutes relative to that office, whereby he was obliged to account to the city for all these docket fees. This was urged with great force and ability by the learned counsel, and it must be admitted that it requires an answer.

It can not be doubted that the defendant could have agreed with his client, the city, that his docket fees should go to it. These fees were his property and he could deal with them as he chose. But certainly express language, or an imperative implication, would be necessary to deprive the defendant of his property. Nor is it less doubtful that the legislature could have required of the defendant, as a condition of his appointment and

of his receipt of the salary attached, that he pay to the city any docket fees he might receive in the city's litigation. But this requirement must likewise have appeared either expressly or by unquestioned implication. The real question, therefore, is: Did the defendant make a contract with the city, whereby he was obliged to account to it for said docket fees? The plaintiff did not rely upon any express contract of the character alleged, but it relied upon the implication from the statutes, relative to the office of city solicitor in cities of the second class.

The Act approved March 7, 1901, P. L. 20, entitled "An act for the government of cities of the second class," established nine departments, one of which was denominated the "department of law." Section 1 of Article XVII provided that "All city officers and employees shall receive a fixed salary for their services, and all fees and penalties shall be collected for the city and paid directly into the city treasury." In the schedule to said act, the salary of the head of the department of law was fixed at $5,000 per year. No change in this salary has since been made. Article IX, as amended by the Act approved June 20, 1901, P. L. 586, first prescribed the duties of the solicitor, and then followed:

"III. He shall make monthly return to the city controller of each item of money or moneys received by or through him or his assistants by virtue of his office, including all fees and perquisites for the preparation of any contracts, bonds or other instruments of writing, or such as may be derived from any other subject matter connected with the city or its affairs, and shall pay monthly such amount to the city treasurer."

The defendant's acceptance of the office of city solicitor constituted his contract of employment, of which the statute furnished the terms. The salary provided was to be his entire compensation for his services. All moneys which he might receive by virtue of his office or which were derived from a "subject matter connected

with the city or its affairs" were to be paid to the city. We have shown that he received these docket fees by virtue of his office of attorney and not by virtue of his office of city solicitor. Were they then fees and perquisites derived from "a subject matter connected with the city or its affairs"? We think not. Of course, the city was interested in all litigation, in which the defendant appeared for it, just as his other clients were interested in litigation which he conducted on their behalf. Yet, as we have seen, the latter were not entitled to docket fees which were taxed to him. The reason is that these fees were not derived from the litigation, the "subject matter," but they were given to him by the statute. So with the docket fees in question. The defendant obtained them by virtue of the statute and not by virtue of any interest which the city had in the litigation. It never had any right or title to them. We think the "fees and perquisites" mentioned in the Act of 1901 were such as belonged to the city and not such as belonged to the defendant himself.

It was argued that the defendant was entitled to receive no fees, other than docket fees, and that the legislature must have intended them in the above provision, because it is presumed to have been aware that an attorney is entitled to them. But this is not entirely correct. By an Act approved June 4, 1901, P. L. 364, "Providing when, how, upon what property, and to what extent, liens shall be allowed for taxes, and for municipal improvements, and for the removal of nuisances, etc." it was enacted that, in certain cases, the assessment of damages by the prothonotary "shall include a five per cent. fee for collection to plaintiff's attorney, not exceeding, however, twenty dollars." These are fees to be received by city solicitors, in all respects like the "attorney's commissions," provided in a note or bond, with warrant of attorney to confess judgment. In the latter instance it is settled law that such commissions are a part of the judgment and belong to the

client and not to the attorney who appears. The same is true of the "fee for collection to plaintiff's attorney," as stated in the Lien Act of 1901 aforesaid. The title to this is in the municipality and not in the attorney at all. Here, then, are moneys, fees and perquisites, which a city solicitor might receive, and to which the language of the amendment to the Charter Act of 1901 may refer. In like manner, if the city solicitor should collect a judgment, the attorney's commissions, if any, would belong to the city. If this be true, the meaning of the statute is clear. The fees and perquisites therein mentioned are those to which the title is in the city—its property—and for all these the solicitor must account if he has received them.

There is no express language in the statute, requiring the defendant to pay these docket fees to the City of Pittsburgh. Neither is the implication clear that such was intended. On the contrary, the language used may well be referred to fees and perquisites, to which the city itself has the title. This construction is, we think, clearly warranted. The construction for which the plaintiff contends would constitute a contract between the city and the defendant, which would deprive him of his own property and transfer the same to the city. This is a meaning which we do not find in the language used, for it is apparent to us that the minds of the parties never met upon that subject.

If we are correct in our conclusion as to the docket fees received by the defendant himself, it follows that he is not liable for those received by his assistants. The city by its own act deprived him of the power to conduct the litigation specified, and he complied therewith. The first assistants were obliged to conduct such litigation and they did; and they received the docket fees by virtue of their office of attorney-at-law. The fees belonged to them, and not to the city or to the defendant; and the defendant could not have compelled them to account for the same to him.

1913.]    Opinion of Court below—Opinion of the Court.

In view of the foregoing, we conclude that the affidavit of defense filed is sufficient to prevent judgment and that the plaintiff is not entitled to recover the moneys demanded from the defendant. Therefore, the rule must be discharged.

*Errors assigned* were the orders of the court.

*William A. Stone,* for appellant.

*Lee C. Beatty,* for appellee, Charles A. O'Brien.

*J. Rodgers McCreery,* for appellee, William B. Rodgers.

, PER CURIAM, January 6, 1913:

These appeals were argued together and the main question in each is the same. The orders discharging rules for judgment are affirmed on the opinion of Judge SWEARINGEN.